FOR PUBLICATION                                             CLOSE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD B. BASSETT,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | HONORABLE WILLIAM H. WALLS<br><br>Civil Action<br>No. 15-2074 (WHW)<br><br>**OPINION** |

APPEARANCES:

JENNIFER L. GOTTSCHALK, Esq.
1920 Fairfax Avenue
Cherry Hill, New Jersey 08003
     Attorney for Petitioner Ronald B. Bassett

SHARON E. ASHE, Esq.
UNITED STATES ATTORNEY'S OFFICE
970 Broad Street
Suite 700
Newark, New Jersey 07102
     Attorney for Respondent United States of America

**WALLS, Senior District Judge:**

**I.    INTRODUCTION**

     Ronald B. Bassett ("Petitioner") moves to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255. (Docket Entries 8 and 10). Respondent United States of America ("Respondent") opposes the motion. (Docket Entry 16). For the reasons stated herein and for the reasons expressed on the record at the March 16, 2016 evidentiary hearing, Petitioner's

FOR PUBLICATION                                              CLOSE

motion is denied, and no certificate of appealability will
issue.

## II.  **BACKGROUND**

After pleading guilty to a drug trafficking conspiracy
involving one kilogram or more of heroin, 21 U.S.C. §§ 841(a)(1)
and (b)(1)(A); 21 U.S.C. § 846, Petitioner was interviewed by
the United States Probation Office on June 22, 2012 in the
presence of his attorney, Ronald Rubinstein. During the course
of the interview, United States Probation Officer Albert Flores
inquired about Petitioner's assets for the purpose of
determining whether Petitioner had the financial ability to pay
a fine. Petitioner indicated during the interview he had no
income. Presentence Report ("PSR") ¶ 81. "The defendant and
counsel explained that there were a number of assets which were
part of the parental estate, which have not been disposed of,
and remain in probate." *Id.*  ¶ 138.

After conducting an investigation into Petitioner's
finances, the Government notified Probation and Petitioner that
it would be seeking an enhancement for obstruction of justice
and objecting to the acceptance of responsibility deduction at
sentencing. It submitted recordings of Petitioner's jailhouse
telephone conversations and documents indicating Petitioner's
late mother's estate, of which Petitioner was the sole
beneficiary, had been out of probate since 2010 in support of

its argument that Petitioner had deliberately mislead Probation as to the extent of his assets in an effort to avoid having to pay a fine.

Mr. Rubinstein responded to the arguments on November 14, 2012, noting that "[t]he gravamen of the government's obstruction claim revolves around the word 'probate,' its correct definition, and Mr. Bassett's statement to the Probation Department at his pre-sentence interview that the properties 'remained in probate.'" A46.[1] He argued:

> The government's argument is apparently based upon a misunderstanding that the term "probate." [sic] The government correctly stated a decree admitting the will to probate was entered on August 5, 2010. However, it incorrectly assumed probate concluded rather than began the process permitting the administration of the estate, and the ability of obtaining letters testamentary from the court. Though inartful, Mr. Bassett's use of "in probate" to describe the status of the assets was not intended to deny ownership of the assets; rather Mr. Bassett intended to communicate that the assets were not immediately available to him in that the estate administration process had not been completed. . . . While the government was correct in so far as Mr. Bassett became the executor of the estate with administration authority as of August 5, 2010, the government incorrectly claimed Mr. Bassett inherited "$550,000 worth of assets outright" and that he has been receiving income from the trust, which has not even been set up as of the date of this letter.

A48. Counsel continued to argue:

> [t]he government has unjustifiably attributed the expertise of a trusts and estates professional to Mr. Bassett, claiming that he intentionally characterized

---

[1] "A" refers to the appendix submitted with Respondent's answer.

> the assets as "in probate" to mislead the government as to the true status of the assets. The fact is that Mr. Bassett had no more than an elementary understanding of the legal terminology of the trusts and estates universe and the correct definition of the word "probate." . . . His assertion that the assets were still "in probate" was intended to convey his understanding that the assets were still inaccessible to him due to the still incomplete estate administration process. It is patently unfair to assume Mr. Bassett had technical knowledge of the legal meaning of "probate" and even more so that he intentionally used this term to mislead the government in order to avoid a fine.

A49. He further argued the Government's characterization of the jailhouse tapes was incorrect and that the properties owned by Petitioner were not generating income. A49-50.

The Court heard argument on January 9, 2013 regarding the Government's motions. After the Government submitted several evidentiary items that indicated Petitioner had assets that he had either not reported to Probation or had undervalued, the argument turned towards the "in probate" remark at the June 22, 2012 interview. The following conversation took place:

> Court:    So the will had been probated and approved, in other words, as of 2010. And in June of 2012, practically two years from that time, what mention if any is made from that which flowed from his mother by way of testacy [to] him?
>
> Counsel:  Well, the first thing, Judge, nothing was asked about what was involved in probate.
>
> Court:    He said everything is in probate. I'm asking – he says everything is in probate, which happened 20 – 22 months before.

FOR PUBLICATION                                                      CLOSE

Counsel:    Well, that's not exactly accurate, Judge.

Court:      But what's August of 2010 and June of 2012?

Counsel:    You're right about the timeframe, but the fact
            of the matter is, that the term "probate" was
            misstated; correct?

Court:      Was what?

Counsel:    Was a misstatement of the term, understanding
            of the term, what the term means.

Court:      Come on now, we have your client, who proudly
            says he's a "good fucking teacher with
            business."

Counsel:    I thought – I'm the one that said it was in
            probate. I'm the one that said –

Court:      You thought. You want to go to jail with him
            too?

Counsel:    I'm the one that said to Mr. Flores – he says
            it in 143 –

Court:      Go ahead with that argument. I caution you,
            since you've been before me, don't go down
            that path.

Counsel:    I don't want to. I don't want to, Judge. I
            want to explain to your Honor that the term
            "in probate" is a term of art for estate
            lawyers. What it means -

Court:      It's a term of art for anybody who wants to
            make it a term of art. But in the real world,
            anybody such as your very – your very astute
            client, he knows that his mother's will is in
            there to be approved. And once that's
            approved, he takes what she divides to it. I
            don't expect him to use the terms that you and
            I learned in Property 1 or Estate Planning,
            but I expect him to understand that. It would
            be unrealistic for me not to assume that he
            knew what was going on with regard to probate.
            . . . I would expect him to know that, once my

5

> mother's will went to the probation department
> and they approved it, whatever she left was
> mine.

T39:9 to 41:5.[2] Counsel continued to argue that the Court's interpretation was "not accurate" because "none of the assets were transferred. In probate, it just means the will was accepted. Now you have to administer the estate." T41:6-11. As he was arguing Petitioner did not have access to the estate or its assets because the will still had to be administered at the time of the interview, the Court stated: "You know what you're doing, you're making it hard on yourself. You're making it harder on yourself. You remind me of Sisyphus. Do you know who Sisyphus was?" T42:18-20. Counsel responded that he did not, and the Court answered "[a] Greek tragic person who was ordained by the gods to push the bolder [sic] up, and came back down and he was consigned to do that for eternity, push the bolder [sic] up, and go back down. You're not getting anywhere with me on that point. I told you, go back to your presentation. I don't want to throw you off stride." T42:22 to 43:2. Counsel concluded his point that "legally none of the assets were transferred to Mr. Bassett's name," T43:6-7, and moved on to discuss the Government's other arguments. The Court ultimately found by a preponderance of the evidence that Petitioner "willfully

---

[2] T refers to the January 3, 2013 Sentencing Transcript.

FOR PUBLICATION                                                    CLOSE

withheld material information about his financial status with the probation officer on June 22, 2012." T105:4-5. The Government's motion for an enhancement was granted, and the motion for a deduction for acceptance of responsibility was denied. T107:3-7. The Court sentenced Petitioner to 210 months.

Petitioner appealed claiming "(1) he received ineffective assistance of counsel; (2) his counsel failed to withdraw from representation, and the District Court failed to disqualify his counsel, when it became obvious that counsel ought to be a witness for Bassett at sentencing; and (3) the District Court improperly imposed a two-level enhancement for obstruction of justice and denied Bassett's request for a downward adjustment for acceptance of responsibility." The Third Circuit declined to address the ineffective assistance of counsel claim for the first time on direct appeal and found that the record was "ambiguous as to whether there was a conflict."

> The conversation between defense counsel and the District Court at sentencing could be read to indicate that a conflict had developed between Bassett and his counsel. However, in light of counsel's previous submissions to the District Court, defense counsel's statements at sentencing could also be seen as a last minute ill-advised attempt to assume blame. Furthermore, it is not sufficiently clear what the District Court meant when it asked counsel if he "want[ed] to go to jail" with his client for this court to find that a conflict existed. Thus, we find that the record is ambiguous as to whether there was a conflict, and we will decline to address this claim on direct appeal.

FOR PUBLICATION                                                    CLOSE

*United States v. Bassett*, 553 F. App'x 196, 198 (3d Cir. 2014).
The Court of Appeals affirmed the sentence finding that there
was ample evidence in the record to support the enhancement for
obstruction, even without determining who told Probation the
estate was "in probate." *Id.* at 199 ("While that comment
elicited a strong reaction from the District Court at
sentencing, it was not the sole or even major piece of evidence
on which the District Court relied.").

Petitioner thereafter filed this § 2255 motion raising four
grounds for relief: (1) that he was denied the effective
representation of counsel during sentencing due to a conflict of
interest created by the sentencing court; (2) that the
sentencing court failed to inquire into the conflict of
interest, rendering the sentencing invalid; (3) that trial
counsel was ineffective for failing to advise Petitioner "to be
accurate about his income and assets if he chose to report
them"' and for failing to move to adjourn the sentencing after
the conflict arose; and (4) that appellate counsel was
ineffective for failing to challenge the denial of Petitioner's
motion to suppress the wiretap evidence on direct appeal.

The Court conducted an evidentiary hearing on March 16,
2016, at which time Mr. Flores and Mr. Rubinstein testified.
After the conclusion of testimony and argument, the Court orally

FOR PUBLICATION                                                    CLOSE

denied the motion. The Court fully incorporates its findings as

stated on the record into this Opinion.

**III.  STANDARD OF REVIEW**

Section 2255 provides in relevant part that:

[a] prisoner in custody under sentence of a court
established by Act of Congress claiming the right to be
released upon the ground that the sentence was imposed
in violation of the Constitution or laws of the United
States ... may move the court which imposed the sentence
to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

**IV.  ANALYSIS**

**A.  Timeliness**

Respondent argues the motion should be dismissed as

untimely. This argument is without merit.

The Anti-Terrorism and Effective Death Penalty Act

("AEDPA") imposes a one-year statute of limitations for filing

motions pursuant to § 2255. The limitation period runs from the

latest of:

(1) the date on which the judgment of conviction becomes
final;

(2) the date on which the impediment to making a motion
created by governmental action in violation of the
Constitution or laws of the United States is removed, if
the movant was prevented from making a motion by such
governmental action;

(3) the date on which the right asserted was initially
recognized by the Supreme Court, if that right has been
newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review;
or

9

FOR PUBLICATION                                                    CLOSE

> (4) the date on which the facts supporting the claim or
> claims presented could have been discovered through the
> exercise of due diligence.

28 U.S.C. § 2255(f). Respondent argues Petitioner was required to file his motion within a year of February 12, 2014, the date of the Third Circuit's mandate. However, "a judgment of conviction becomes final within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) (internal quotation marks omitted); *see also Greene v. Palakovich*, 606 F.3d 85, 91 (3d Cir. 2010), *aff'd sub nom Greene v. Fisher*, 132 S. Ct. 38 (2011). In this case, Petitioner did not file a petition for certiorari, and his time to do so expired 90 days after the Third Circuit denied his appeal on January 21, 2014: April 21, 2014. Petitioner therefore had until April 21, 2015 to file a timely § 2255 motion.

Petitioner's counsel filed his original motion on March 22, 2015. (Docket Entry 1). Petitioner filed a pro se motion on March 31, 2015, and the Court ordered Petitioner's counsel to inform the Court as to which petition the Court should review. (Docket Entry 5). In response to that order, counsel for

Petitioner informed the Court that Petitioner wishes to prosecute both filings as "[t]he second one is intended to supplement the first and includes additional case citations." Counsel submitted this was permitted by Fed. R. Civ. Pro. 15(d). (Docket Entry 6). By Order dated April 28, 2015, the Court administratively terminated the motion and directed counsel to file one all-inclusive motion within 30 days. (Docket Entry 7). Petitioner complied with the order and filed the amended motion on May 21, 2015. (Docket Entry 8).

Petitioner satisfied the statute of limitations when he filed his original motion within the one-year period. The amended petition relates back to the original pursuant to Federal Rule of Civil Procedure 15(c). The petition was therefore timely filed.

## B. Conflict of Interest

Petitioner argues trial counsel was ineffective during sentencing due to a conflict of interest created by the Court's "threat" to sanction counsel.

In *Mickens v. Taylor*, the Supreme Court defined an "actual conflict" as "precisely a conflict that affected counsel's performance — as opposed to a mere theoretical division of loyalties." 535 U.S. 162, 171 (2002). Although *Mickens* concerned a conflict arising out of trial counsel's prior representation of the victim, the Third Circuit has applied its reasoning to

other conflict of interest claims. *See Chester v. Comm'r of Pa. Dep't of Corr.*, 598 F. App'x 94 (3d Cir. 2015) (applying *Mickens* to case in which petitioner alleged his attorney's pending DUI charge in the same court in which petitioner was tried created an actual conflict requiring a new trial). "[I]n order to prove an actual conflict, the petitioner must show: (1) that some plausible alternative defense strategy or tactic might have been pursued; and (2) that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* at 106 (citing *United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988)).

The Court finds that there was no actual conflict between Mr. Rubinstein and Petitioner at sentencing as there was no plausible defense strategy that was abandoned due to a division of loyalties. Primarily, the purported strategy of Mr. Rubinstein taking responsibility for the comments to Probation regarding Petitioner's mother's estate is not of sufficient substance to have been a plausible defense to the obstruction enhancement. *See Gambino*, 864 F.2d at 1070 (Defendants claiming an actual conflict "need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative" (internal citation and quotation marks omitted)).

Mr. Rubinstein testified that *both* he and Petitioner represented to Probation that the estate was in probate. Throughout his written sentencing submissions, however, Mr. Rubinstein had argued that Petitioner should not be subjected to an obstruction enhancement because Petitioner did not understand the legal definition of the term "probate" when *Petitioner* made the statement. *See* A46-53. When confronted during cross-examination with the inconsistencies between his written submissions and oral statements, Mr. Rubinstein attempted to reconcile the discrepancies by saying he did not include the fact that he also had made the statement to Probation in his papers because it was not relevant to whether Petitioner should receive an obstruction enhancement. This explanation is not credible as that fact would have been equally irrelevant to the enhancement question at sentencing unless it was *only* Mr. Rubinstein who made the statement. As his testimony was that Petitioner did in fact tell Probation that his late mother's estate was in probate, the account presented at the hearing does not credibly explain why Mr. Rubinstein would unequivocally state at sentencing that *he* made the statement to Probation.

Based on the Court's review of the record and Mr. Rubinstein's testimony at the hearing, the Court concludes Mr. Rubinstein's statement at sentencing was an attempt to assume the blame for the "in probate" representation. This is the only

CLOSE

remotely plausible way to reconcile his position in his papers,
namely that Petitioner made the comments but should not be
penalized for them because Petitioner is not a lawyer or estate
professional that understood the meaning of "in probate", and
Mr. Rubinstein's statement at sentencing. Combined with the
plethora of other evidence that Petitioner willfully concealed
his assets from Probation, no reasonable jurist could conclude
that a last-minute assumption of the blame for Petitioner's
misrepresentation has sufficient substance to be a viable
defense strategy.

        Even if the Court were to find that there was a plausible
defense strategy, it also finds that Mr. Rubinstein's statements
in his affidavit and trial testimony that the Court's "you want
to go to jail with him" rhetorical device so "chilled" him so as
to lead him to abandon this strategy are not credible. Mr.
Rubinstein testified that he has been practicing for over 50
years in various state and federal courts, including the Eastern
and Southern Districts of New York. His assertion that he was so
affected by the Court's remark, which was merely intended to
convey to Mr. Rubinstein that he should not try to assume the
blame for Petitioner's actions, that he could not effectively
represent Petitioner's interests is not credible. The Court
finds persuasive the reasoning of the Court of Appeals for the
District of Columbia Circuit's line of cases beginning with

*United States v. Shark.* In that case, the D.C. Circuit noted that it "very much doubt[ed] that mere fear of rebuke from the court could ever give rise to a conflict of interest sufficient to establish a predicate for ineffective assistance. Were that the case, *any* provocation of the court, even on the smallest matter, could be maneuvered into an excuse for invalidating a conviction." 51 F.3d 1072, 1076 (D.C. Cir. 1995) (emphasis in original) (holding district court's comment that trial counsel "'doesn't pay any attention to me, ... and next time I'm going to get his attention and put him in the cell block'" did not create an actual conflict); *see also United States v. Gray-Burriss*, 791 F.3d 50, 63 (D.C. Cir. 2015) ("The mere fact that a court has threatened an attorney with contempt is insufficient to make [an actual conflict] showing."); *United States v. Taylor*, 139 F.3d 924, 931–32 (D.C. Cir. 1998) (holding no conflict where attorney may be cited for contempt as "all attorneys potentially face contempt citations, no particular attorney can be considered ineffective due to a concern that he or she might be so cited."); *United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996) (noting "friction between a trial counsel and the court does not, as a matter of law, create a conflict of interest between counsel and client"). No attorney of Mr. Rubinstein's experience could credibly believe that the Court would in fact jail him for his statement. The fact that he

CLOSE

continued to vigorously argue on behalf of his client for several hours also indicates he was not "chilled" by the Court's remark.

As the Court finds that there was no plausible defense strategy that was abandoned, and that Mr. Rubinstein was not in fact "chilled" by the Court's rhetorical device, the Court finds that Petitioner has not established an actual conflict or ineffective assistance of counsel. The motion is denied on this point.

## C. Whether the Sentencing Court Erred by Failing to Inquire Into the Conflict of Interest

Petitioner further argues the sentencing court erred by failing to halt the proceedings once it became clear that a conflict had arisen between him and his counsel. Amended Petition at 14. In *Mickens*, the Supreme Court construed its precedents as holding that a trial court need only inquire into potential conflicts "when 'the trial court knows or reasonably should know that a particular conflict exists,' which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict . . . ." 535 U.S. 162, 168-69 (2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347, 346 (1980)). If the sentencing court was aware or should have been aware of the conflict but did not inquire into it, and no objection to the conflict was made at trial, Petitioner must

FOR PUBLICATION                                                    CLOSE

establish, at a minimum, there was an actual conflict. *United States v. Berroa*, 374 F. App'x 266, 269 (3d Cir. 2010) (citing *Mickens*, 535 U.S. at 174).

As the Court has already found that no actual conflict existed at sentencing, Petitioner is not entitled to relief on this claim. *Chester v. Comm'r of Pa. Dep't of Corr.*, 598 F. App'x 94, 108 (3d Cir. 2015) (noting that a petitioner "is not entitled to relief on an argument that the trial judge failed to inquire into the potential conflict unless he can establish that an actual conflict adversely affected [counsel's] performance" (citing *Mickens*, 535 U.S. at 168)).

## D. Whether Trial Counsel Otherwise Provided Ineffective Assistance of Counsel

Petitioner asserts that Mr. Rubinstein was ineffective for failing to advise him "to be accurate about his income and assets if he chose to report them," and for failing to move to adjourn sentencing when the purported conflict arose. These claims are governed by the *Strickland* standard. Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner does not state in his affidavit that Mr. Rubinstein did not tell him not to lie to Probation, nor does he cite any authority for the proposition that an attorney renders ineffective assistance of counsel when he or she fails to tell a client not to lie. The few district courts to have confronted this issue have determined an alleged failure to advise a client not to lie does not constitute ineffective assistance of counsel. *See, e.g., Martin v. United States*, No. 11-958, 2013 WL 714648, at *8 (D. Md. Feb. 26, 2013) ("The government also correctly asserts that even if defense counsel had not advised Petitioner of the consequences of committing perjury, this Court would still not consider defense counsel ineffective."), *aff'd* 539 F. App'x 116 (4th Cir. 2013) (denying certificate of appealability); *Smith v. United States*, No. 8:07-cr-25, 2010 WL 3363037, at *2 (M.D. Fla. Aug. 24, 2010) ("An attorney cannot be ineffective in failing to explain the obvious . . . ."); *Cleckler v. United States*, No. 2:08-cv-397, 2009 WL 1507538, *13 (M.D. Ala. May 29, 2009) ("Defense counsel . . . is not required to warn a defendant that testifying untruthfully could lead to a sentence enhancement for obstruction of justice . . . ."), *aff'd* 410 F. App'x 279 (11th Cir. 2011) (affirming on District Court's credibility findings). The Court agrees with the conclusions of

its sister courts and finds that Petitioner has not established that trial counsel's actions fell below an objective standard of reasonableness.

Petitioner also alleges that Mr. Rubinstein was ineffective for failing to move to adjourn sentencing once the conflict of interest became apparent. As the Court has already found that there was no actual conflict of interest between Petitioner and his attorney at sentencing, Petitioner has not established the first prong of the *Strickland* analysis. He is therefore not entitled to relief.

Petitioner has not established ineffective assistance of counsel under the *Strickland* standard. The motion is therefore denied as to this claim.

**E. Whether Appellate Counsel was Ineffective for Failing to Appeal the Denial of Petitioner's Motion to Suppress the Wiretap Evidence**

Petitioner's final claim is that his appellate counsel was ineffective for failing to challenge the denial of the motion to suppress the wiretap evidence. He asserts appellate counsel should have known that the conflict issue was more appropriate for § 2255 proceedings, and therefore it was unreasonable for her to raise that issue on appeal instead of the suppression issue. *But see Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984) (noting considering conflict claim on direct appeal is appropriate where record is sufficiently developed).

19

FOR PUBLICATION                                          CLOSE

In determining whether appellate counsel was ineffective, the Court applies the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Smith v. Murray*, 477 U.S. 527, 535-536 (1986). To establish the prejudice prong, Petitioner must show "that there is a 'reasonable probability' — 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence — that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 694-95).

Other than the mere fact that the denial of the motion to suppress was not raised on appeal, Petitioner has set forth no facts or supporting case law to support his contention that appellate counsel was ineffective. Appellate attorneys are not constitutionally required to raise every theoretical issue on appeal, *see United States v. Turner*, 677 F.3d 570, 577-78 (3d Cir. 2012), and Petitioner has not provided the Court with any evidence that the failure to raise the issue on appeal was unreasonable. As Petitioner has not carried his burden of establishing ineffective assistance of counsel, the motion is denied on this ground.

FOR PUBLICATION                                                    CLOSE

## F. Certificate of Appealability

AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has not made a substantial showing of the denial of a constitutional right.

## V. CONCLUSION

For the reasons stated above and on the record at the March 16, 2016 evidentiary hearing, Petitioner's Motion to Vacate, Correct, or Set Aside his sentence is denied. No certificate of appealability shall issue. An accompanying Order will be entered.

_24 May 2016_
Date

WILLIAM H. WALLS
Senior U.S. District Judge

21